## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**VICTOR JOSEPH SILVIO**                                **CIVIL ACTION**

**VERSUS**

**NO. 20-381-BAJ-RLB**

**ANDREW M. SAUL**
**COMMISSIONER OF SOCIAL SECURITY**

## NOTICE

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on August 18, 2021.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

VICTOR JOSEPH SILVIO                    CIVIL ACTION

VERSUS

                                        NO. 20-381-BAJ-RLB
ANDREW M. SAUL
COMMISSIONER OF SOCIAL SECURITY

REPORT AND RECOMMENDATION

Victor Joseph Silvio (Plaintiff) seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for Disability Insurance Benefits under the Social Security Act. (R. Doc. 1). Having found all of the procedural prerequisites met (Tr. 1-5), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you… file an action in Federal district court…"). For the reasons given below, the Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

I.     PROCEDURAL HISTORY

Plaintiff filed his application for disability insurance benefits March 6, 2018, alleging that he became disabled on January 1, 2017. (Tr. 134). Plaintiff's alleged disabling conditions include blind or low vision, a stent in his heart, pinched nerves in his right shoulder, arthritis in his right shoulder, high cholesterol, emphysema in both lungs, and depression. (Tr. 165). Plaintiff's application for benefits was initially denied by the Social Security Administration on September

4, 2018. (Tr. 10). Thereafter, Plaintiff filed a written request for a hearing on September 11, 2018. (Tr. 10). An Administrative Law Judge ("ALJ") held a video hearing on July 15, 2019, after which he issued an unfavorable decision on September 24, 2019. (Tr. 7 and 10).

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability benefits. The medical evidenced established that Plaintiff suffers from depression, anxiety, chronic obstructive pulmonary disease (COPD), high cholesterol, severe heart disease with stent placement, and severe disorders of the upper extremity (right shoulder). (Tr. 12-13). The ALJ, however, concluded (1) that the limitations caused by Plaintiff's depression, anxiety, COPD, and high cholesterol were mild and non-severe and (2) the severity of Plaintiff's heart disease and upper extremity disorder does not meet or medically equal the criteria of any impairment listed in the social security regulations. (Tr. 14-15). The ALJ also found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), but Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, and could sit, stand, and/or walk for six hours in an eight-hour workday. (Tr. 15). In light of Plaintiff's RFC, the ALJ concluded that Plaintiff is capable of performing past relevant work as a taxi/uber driver, restaurant manager, restaurant trainer, and fast-food manager. (Tr. 21). Based on this finding, the ALJ concluded that Plaintiff was not disabled because he could perform his past relevant work. (Tr. 21).

Plaintiff's request for review of the ALJ's decision (Tr. 129) was denied by the Appeals Council on April 20, 2020. (Tr. 1-6). The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's second request for review. *See* 20 C.F.R. § 404.981.

2

## II.     STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited under 42 U.S.C. § 405(g) to two inquiries: (1) whether there is substantial evidence to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as less than a preponderance but "more than a mere scintilla." *Bowling v. Shalala,* 36 F.3d 431, 434 (5th Cir. 1994). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan,* 895 F.2d at 1022. The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (internal quotations omitted). The Court may not reweigh the evidence or try the issues *de novo,* nor may it substitute its judgment for that of the Commissioner. *Cook v. Heckler,* 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000) (quoting 42 U.S.C. § 405 (g)). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *See Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

**III.    ALJ'S DETERMINATION**

To qualify for benefits, the claimant must establish that he is disabled within the meaning of the Social Security Act ("SSA"). *Herron v. Bowen,* 788 F.2d 1127, 1131 (5th Cir.1986) (internal citations omitted). The SSA defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan,* 914 F.2d at 618.

The Commissioner (through an ALJ) applies a five-step sequential analysis to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4). First, the claimant must prove he or she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he or she proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he or she is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education, and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2022.

2. Plaintiff has not engaged in substantial gainful activity since January 1, 2017, the alleged onset date. 20 C.F.R. § 404.1571 *et seq.*.

3. Plaintiff has the following severe impairments: heart disease with stent placement; and disorders of the upper extremity (right shoulder). 20 C.F.R. § 404.1520(c).

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1; 20 C.F.R. § 404.1520(d), 404.1525 and 4041526.

5. Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except Plaintiff cannot lift and carry 20 pounds occasionally and 10 pounds frequently. Plaintiff could sit for six hours in an eight-hour workday and stand and/or walk for six hours in an eight-hour workday. Plaintiff can never climb ladders, ropes, or scaffolds. Plaintiff can never crawl.

6. Plaintiff is capable of performing past relevant work as a taxi driver (Uber driver), restaurant manager, restaurant trainer, and fast-food manager. This work does not require the performance of work-related activities precluded by Plaintiff's RFC. 20 C.F.R. § 404.1565.

7. Plaintiff has not been under a disability, as defined in the Social Security Act from January 1, 2017, through the date of the ALJ's decision. 20 C.F.R. § 404.1529(f).

## IV. DISCUSSION

Plaintiff advances two arguments in support of his request to reverse the ALJ's decision, which will be addressed within the framework of the five-step analysis. First, Plaintiff avers that remand is required because the ALJ failed to include mental limitations he found credible in his RFC or hypothetical questions to the vocational expert. (R. Doc. 10 at 1). Second, Plaintiff contends that the ALJ failed to accommodate Plaintiff's severe right shoulder impairment. (R. Doc. 10 at 1).

5

### A.   The ALJ did not fail to include credible limitations in his RFC and hypotheticals to the vocational expert

Plaintiff first contends that the ALJ failed to include mental limitations in his RFC determination and hypotheticals to the vocational expert. (R. Doc. 10 at 2-3). Plaintiff suggests that the ALJ's step two analysis, noting that Plaintiff has no more than mild limitations in the four functional areas, should necessarily result in certain mental limitations included in the RFC. This is incorrect. The limitations in the paragraph B criteria are specifically not a RFC assessment. The RFC assessment "is a function-by-function assessment based upon all of the relevant evidence of an individual's *ability to do work-related activities.*" *Jeansonne v. Paul*, __ Fed. Appx. __, 2021 WL 1373965 (5th Cir. April 12, 2021) (emphasis added). If the ALJ determines at step two that Plaintiff's mental limitations do not significantly affect his ability to work, then the ALJ is not required to find that Plaintiff's has mental limitations at step five. *Id.* at *4 "Generally, at step five, an ALJ considers the claimant's" RFC "as part of the determination of whether the claimant is unable to perform other substantial gainful activity." *Id.* at *3.

As noted above, at step two, the claimant must prove his impairment is "severe." The Fifth Circuit "defines 'severe impairment' for purposes of step two in the negative: '[A]n impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' *Jeansonne v. Paul*, __ Fed. Appx. __, 2021 WL 1373965, at *2 (5th Cir. April 12, 2021) (citing *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

In the instant matter, the ALJ found, at step two, that Plaintiff's "medically determinable mental impairments of anxiety and depression, considered singly and in combination, do not

6

cause more than a minimal limitation" on Plaintiff's "ability to perform basic mental work activities and are therefore [non-severe]." (Tr. 13).

In determining the severity of Plaintiff's mental impairments, the ALJ considered paragraph B's four areas of mental functioning: (1) understanding, remembering, or applying information; (2) interaction with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. For each of these areas, the ALJ concluded that Plaintiff only had mild limitations based on the medical evidence. Particularly, after the consultative exam, Dr. Seth Kunen, Ph. D., Psy. D., found that Plaintiff can take care of most of his activities of daily life and has adequately developed fund of knowledge, conceptual thinking skills, logical thinking skills, social judgment skills, and computation skills. Moreover, Dr. Kunen noted that Plaintiff's receptive and expressive language skills were well developed, and Plaintiff was well oriented to person, place, time, and situation. (Tr. 484).

As admitted by Plaintiff, Dr. Annette Brooks-Warren, M.D., who performed the psychiatric review technique, found that Plaintiff has mild and non-severe mental impairments. (Tr. 68). Dr. Brooks-Warren described Plaintiff's mood as euthymic and noted that he has a normal fund of general knowledge and the ability to solve basic math problems. (Tr. 68). Moreover, Dr. Brooks-Warren's notes indicate that Plaintiff can take care of his personal hygiene, does not need reminders to take his medication, and can handle his own personal finances. (Tr. 69). Dr. Brooks-Warren concluded that Plaintiff's mental impairments *do not pose anything more than minimal limitations on his ability to work*. (Tr. 69) (emphasis added).

Dr. Kunen and Dr. Brooks-Warren's findings are corroborated by the Function Report submitted by Plaintiff's daughter on May 23, 2018. (Tr. 199). In this report, Plaintiff's daughter noted that Plaintiff can clean, do laundry, iron, and cook. (Tr. 199). The Function Report further

7

indicates that Plaintiff does his own shopping for groceries, as well as personal care and hygiene products. (Tr. 200). Moreover, the Function Report shows that Plaintiff is able to pay bills, count change, handle his savings account, and use a checkbook/money orders. (Tr. 200). Accordingly, substantial evidence supports the ALJ's findings that Plaintiff's mental limitations were not severe in that they do not affect his ability to do work.

The Court further disagrees with Plaintiff's contention "omission of mild mental functional limitations is absolute legal error when the issue involves returning to semi-skilled or skilled past relevant work." (R. Doc. 10 at 4). According to Plaintiff, remand is "required for consideration of the mental limitations the ALJ found credible" and "their impact on" Plaintiff's "ability to perform his past relevant skilled and semi-skilled work." (R. Doc. 10 at 5). To support his assertion Plaintiff cites *Nolen v. Berryhill*, No. 16-CV-00153-SEB-DML, 2017 WL 3575822, at *6 (S.D. Ind. July 26, 2017), report and recommendation adopted, No. 16-CV-00153-SEB-DML, 2017 WL 3535202 (S.D. Ind. Aug. 17, 2017). Not only is *Nolen* out of circuit and not controlling, but Plaintiff's reliance on *Nolen* is inapposite.

Unlike the present case, the ALJ in *Nolen* failed to consider the plaintiff's mental limitations at all in his RFC analysis. The court explained that the ALJ's "failure to account" for the plaintiff's "mild limitations in the *RFC analysis*" was not harmless error because the agency initially determined that the plaintiff *could not* return to her past skilled work, while the ALJ found that the plaintiff *could* return to her prior skilled work. *Id.* at *6. (internal quotation marks and citations omitted) (emphasis added). Even then, *Nolen* recognized that "the fact the ALJ concluded for purposes of step two that [the plaintiff's] mental impairment was properly rated as

8

'mild' and not 'none' […] does not mean than an RFC *must* include mental functioning limitations." *Id.* at 6. (emphasis included in original).

In this matter, although the ALJ did not (and need not) include Plaintiff's mental limitations in the RFC, the ALJ took Plaintiff's mental limitations into account when making his RFC determination. In his RFC analysis, the ALJ provided:

> On August 18, 2018, Annette Brooks-Warren, M.D., a medical consultant with Disability Determination Services opined the claimant did not have a severe medically determinable mental impairment. The claimant has the following limitations to B criteria: mild, mild, mild, and mild (Exhibit 2A/1-13). The undersigned finds this opinion is persuasive, as it is consistent with and supported by the overall medical evidence of record that does not establish a severe medically determinable mental impairment. These findings are consistent with the claimant's overall largely normal mental status examinations (Exhibit 6F). These findings are supported by explanation.
>
> The undersigned finds the results of the consultative examination in Exhibit 6F to be persuasive as *they are consistent with and supported by the overall medical evidence of record that supports the finding he would be able to return to his past relevant work as an Uber driver.* These findings are further consistent with the claimant's largely unremarkable physical examinations and stable shoulder and heart conditions; as well as normal mental status findings (Exhibit 9F) (Exhibit11F).

(Tr. 20) (emphasis added).

Accordingly, *Nolen's* conclusion that the ALJ's decision failed to "account for" the plaintiff's mental limitations in the "RFC analysis" is inapplicable to this case. As detailed above, the ALJ did account for Plaintiff's mental limitations in the RFC analysis. The ALJ ultimately concluded that Plaintiff's mental limitations did not significantly impact his ability to do work-related activities, and therefore, (appropriately) declined to include the mental limitations in the RFC and determination of Plaintiff's ability to perform past relevant work.

In addition to being distinguishable, *Nolen* is arguably inconsistent with the Fifth Circuit's unpublished decision in *Jeansonne v. Paul*, __ Fed. Appx. __, 2021 WL 1373965, at *2

9

(5th Cir. April 12, 2021). The Court in *Jeansonne* recognized that "all relevant evidence in the case record" should be considered for RFC, and "[t]he adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that were not 'severe.'" *Jeansonne,* 2021 WL 1373965, at *3. The Court also noted, however, that the RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's *ability to do work related activities.*" *Id.* (emphasis in original). Because the evidence supported a finding that the claimant's mild mental limitations do not significantly affect her ability to work (not severe impairment at step two), the ALJ therefore did not err in declining *to consider* the claimant's mental impairments at step five (no need to consider non-severe mental impairment at step five). *Id.* Put another way, "[b]ecause substantial evidence shows that [claimant's] mild mental limitations do not significantly affect her ability to work, we also find no error at step five—whether the impairment prevents the claimant from performing any other substantial gainful activity." *Id.*

      To the extent the ALJ in the instant matter did not adequately consider the non-severe impairments in formulating the RFC at step five, the Court agrees with the rationale of the court in *Jeansonne* and likewise finds no error.

      The Court finds that because substantial evidence supports the finding that Plaintiff's mild mental limitations do not significantly limit his ability to work and do not prevent the claimant from performing any other substantial gainful activity, the ALJ need not include Plaintiff's non-severe impairments in the RFC and determination of Plaintiff's ability to perform past relevant work (whether skilled or unskilled).

10

>   **B.     The ALJ did not fail to accommodate Plaintiff's severe right shoulder impairment**

In his final challenge to the ALJ's decision, Plaintiff argues that the ALJ failed to include his severe right shoulder impairment in the ALJ's RFC and hypothetical questions to the vocational expert. (R. Doc. 10 at 5). In so arguing, Plaintiff states that "[t]he ALJ adopted absolutely no limitations on" Plaintiff's "ability to reach, perform overhead work, or perform any other activities with his right shoulder." (R. Doc. 10 at 5). The ALJ, however, "is not required to incorporate limitations in the RFC that he did not find to be supported in the record." *Adams v. Colvin*, 202 F. Supp. 3d 644, 649 (W.D. Tex. 2016) (citing *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

After considering the entire record, including Plaintiff's testimony at the hearing and medical evidence concerning his right shoulder impairment, the ALJ found that "the objective findings in this case fail to provide strong support for" Plaintiff's "allegations of disabling symptoms and limitations." (Tr. 17). The ALJ reasoned that during the hearing, Plaintiff "acknowledged being able to lift overhead." (Tr. 17). Moreover, Plaintiff "reported having no muscle pain, no joint pain, and no back pain." (Tr. 17 and 271). Plaintiff further reported that "his shoulder pain comes and goes but had largely been stable with treatment." (Tr. 17 and 286). On examination of Plaintiff's shoulder, Dr. Brian Higgins, M.D., found that Plaintiff had no limitation of joint movement and there was no weakness or signs of neurological deficits. (Tr. 17, 287, and 291). Plaintiff was assessed as having "normal internal and external rotations," "normal forward flexion and extension," and a "full range of motion and no weakness of abduction." (Tr. 17 and 291).

Importantly, the ALJ rejected the opinion of Dr. Scott Newton, M.D., who opined that Plaintiff could perform a full range of medium work. (Tr. 20). In so rejecting, the ALJ explained

11

Dr. Newton's opinion was not persuasive because Plaintiff's shoulder disorder "would reduce him to no more than light work." (Tr. 20). Accordingly, the ALJ found that Plaintiff's shoulder impairment, in combination with other impairments, "would preclude him from more than light work with various postural limitations to prevent an exacerbation of symptoms." (Tr. 20). Specifically, the ALJ determined that Plaintiff has the RFC "to perform light work as defined in" 20 C.F.R. § 404.1567(b) "except" Plaintiff "could lift and carry 20 pounds occasionally and 10 pounds frequently." Plaintiff "could sit for six hours in an eight-hour workday and stand and/or walk for six hours in an eight-hour workday." Plaintiff "can never climb ladders, ropes, or scaffolds." Plaintiff "can never crawl." (Tr. 15). The Court finds that the ALJ's RFC determination is not erroneous and supported by substantial evidenced.

## V.    CONCLUSION

For the reasons given above, the Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on August 18, 2021.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**